**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
PHARMACEUTICAL SALES              :
CONSULTING CORP.,                 :      CIVIL ACTION NO. 95-5961 (MLC)
                                  :
        Plaintiff,                :
                                  :         MEMORANDUM OPINION
        v.                        :
                                  :
ACCUCORP PACKAGING, INC.,         :
                                  :
        Defendant,                :
                                  :
        and                       :
                                  :
J.W.S. DELAVAU CO., INC.,         :
                                  :
        Defendant/Third-party     :
        Plaintiff,                :
                                  :
        v.                        :
                                  :
JOHN S. SADLON, et al.,           :
                                  :
        Third-party Defendants.   :
_____:
```

**COOPER, District Judge**

This Court, <u>inter</u> <u>alia</u>, entered judgment in favor of the plaintiff, Pharmaceutical Sales Consulting Corp. ("PSCC"), on the counterclaims asserted by the defendant/third-party plaintiff J.W.S. Delavau Co., Inc. ("Delavau"). (Dkt. entry no. 144, 6-29-05 Order & Am. J.)  The Third Circuit Court of Appeals reversed that part of the judgment, and remanded for further proceedings on the counterclaims. (Dkt. entry no. 157.)

BACKGROUND

The parties are familiar with the background of this action. (<u>See</u> dkt. entry nos. 133 & 143, 9-27-04 Mem. Op. & 6-29-05 Mem.

Op.)  The Court will only recite the facts that are relevant to the issues on remand.

The Court's relevant findings of fact are as follows.  The Leff family (1) runs Delavau, which is a closely-held corporation making pharmaceutical and nutritional products, and (2) formed Accucorp Packaging, Inc., which specialized in product packaging. (9-27-04 Mem. Op., at 3.)  Lederle Laboratories ("Lederle") also made pharmaceutical and nutritional products. (Id.)  John S. Sadlon, who was a pharmacist, held various positions at Lederle. (Id. at 5.)  While at Lederle, Sadlon developed a relationship with Richard DiBenedetto, who approved and oversaw the work of Lederle's outside contractors.  (Id.)  Sadlon invested in a venture being overseen by DiBenedetto's son and lost his entire investment when the venture failed.  (Id.)  Sadlon also knew DiBenedetto's son's fiancee, Laura Micelli.  (Id. at 6.)

Sadlon founded PSCC after working at Lederle and two other pharmaceutical companies, and was PSCC's principal.  (Id. at 2, 6.)  Sadlon worked through PSCC as a consultant, part-time pharmacist, and broker between contractors and pharmaceutical companies.  (Id. at 6.)  Sadlon contacted Delavau in October of 1990, resulting in PSCC and Delavau entering into a contract whereby Sadlon would receive a 5% commission for any business brought to Delavau from Lederle.  (Id. at 7.)

Sadlon made Micelli his only partner in PSCC, and under their oral agreement Micelli was entitled to 50% of Sadlon's brokering

2

revenue, including deals brokered between Delavau and Lederle, even though her responsibilities did not include the contract between Delavau and Lederle. (Id. at 7-8.)  The Court did not find credible the testimony of Sadlon and DiBenedetto's son that (1) DiBenedetto was not aware of the partnership between Micelli and Sadlon, and (2) it was mere coincidence that Sadlon was giving 50% of his yet unearned fees from his agreement to refer Lederle work to Delavau to a person connected to DiBenedetto, who at that time remained in an influential position at Lederle as to awarding contracts. (Id. at 9.)

The Court instead credited the testimony of Alan Verduin, who was Lederle's director of manufacturing services and an "uninterested party", who testified that (1) he was "shocked" when he was told about Micelli's connections to the deals between Delavau and Lederle, (2) in his opinion it was a violation of his and DiBenedetto's general orders, and (3) if Lederle had been aware of the situation, DiBenedetto probably would not have been allowed to make any decisions regarding Delavau. (Id. at 10-11.)

PSCC and Delavau created a contract in July of 1992 covering any new work generated from Lederle ("1992 contract"). (Id. at 13.)  Under the 1992 contract, PSCC received a commission on any work Delavau received from Lederle, even if PSCC did not broker it, in exchange for PSCC giving Delavau a right of first refusal to any business or sales conducted through PSCC from Lederle:

3

> PSCC agrees that as to any business or sales it conducts
> with respect to [Lederle], all such business will be
> exclusively presented to [Delavau]. [Delavau] shall have
> right of first refusal as to all products which PSCC is
> anyway involved in the sales to [Lederle].  In the event
> [Lederle] specifies that [Delavau] may not be the
> supplier for a particular product which [Delavau] is
> capable of producing, PSCC will pay to [Delavau] 2% of
> any sales earned by PSCC by virtue of brokering or
> placing business with another supplier.

(Id.)  Sadlon agreed to the contract, even though at the time he had a separate commission contract for the packaging of Lederle products with nonparty Testpak, Inc. ("Testpak"), which Delavau used as a subcontractor.  (Id. at 14.)

Delavau continued to work with PSCC from 1993 through 1995, even as Sadlon demanded more in commissions, as it was concerned that Sadlon would follow through on his threats to pull the Lederle business.  (Id. at 15.)  PSCC received about $1 million in commissions from Delavau for Lederle sales during this time, and Delavau earned over $11 million from its Lederle business. (Id. at 16-17.)  Only after Micelli married DiBenedetto's son did she began to receive profits from PSCC, even though she made no capital contributions to PSCC and her only contributions to the operations were making spreadsheets.  (Id. at 17.)

Delavau discovered in late 1993 that Sadlon brokered deals between Testpak and Lederle.  (Id.)  But Delavau continued to pay PSCC because it was "threatened" by Sadlon with the loss of Lederle business if it did not.  (Id.)  Under the 1992 contract, Delavau demanded the 2% share of PSCC's profit from brokering the

4

sale between Testpak and Lederle, but Sadlon refused and again threatened Delavau with the loss of Lederle's business.  (Id.) Delavau stopped paying PSCC after another nonparty advised Delavau that Sadlon had sought to broker Lederle business for it. (Id. at 18.)  Delavau stopped paying PSCC in 1995, but continued doing work for Lederle.  (Id.)

PSCC brought this action to recover commissions due from Delavau for securing business with Lederle.  (Id. at 1.)  Delavau asserted (1) an affirmative defense that the contract was voidable because PSCC secured the deals via commercial bribery, and (2) a counterclaim for breach of contract because PSCC violated the contract between PSCC and it by securing deals with Lederle for others.  (Id.)  During the course of the litigation, it became apparent that PSCC was not properly incorporated.  (See 5-13-99 Mem. Op.)  But the Court "permitted PSCC to continue as a plaintiff under the doctrine of corporation by estoppel."  (9-27-04 Mem. Op., at 8 n.4.)

The Court, after a nonjury trial on the issue of liability, (1) entered judgment for Delavau on the complaint, and for PSCC on the counterclaims, and (2) determined that no party was entitled to attorney fees under a fee-shifting provision in the contract, as no party "prevailed in full."  (Id. at 26.)  The Court held that PSCC was not entitled to any relief on the ground that its contract with Delavau was voidable for commercial bribery.  The

Court further held that Delavau was not entitled to any relief on
its counterclaims because awarding relief "would result in an
unjustified windfall."  (Id.)

        The Third Circuit Court of Appeals held the "District Court
correctly held that PSCC's commercial bribery tainted the portion
of the contract in which PSCC agreed to negotiate contracts
between Lederle and Delavau in exchange for fees from Delavau",
and thus Delavau was not entitled to disgorgement of those fees.
(Dkt. entry no. 157-3, at 13.)  But the Court of Appeals held that
the portion of the contract entitling Delavau to "2% of any sales
earned by PSCC by virtue of brokering or placing [Lederle's]
business with another supplier" was severable from that portion
of the contract tainted by commercial bribery.  (Id. at 14.)  As
it was "undisputed that Delavau did not profit from PSCC's
placement of Lederle's business with other companies, and that
Delavau was harmed by PSCC's failure to honor that provision . .
. Delavau would not be unjustly enriched if it were allowed to
enforce that provision of the contract and to receive from PSCC
what it bargained for."  (Id.)  The Court of Appeals thus directed
this Court to adjudicate the breach of contract counterclaim, and
revisit whether Delavau is entitled to contractual attorney fees.
(Id. at 15.)  On remand, this Court concludes that Delavau is
entitled to recover (1) under its counterclaim for breach of
contract, and (2) the full amount of attorney fees it seeks.

## DISCUSSION

### I.  Delavau's Breach of Contract Counterclaim

This Court now finds that the counterclaims for breach of contract and disgorgement are distinguishable, as they address separate contract provisions.  Commercial bribery tainted the dealings between Delavau and PSCC as to their initial agreement on business between Delavau and Lederle, but it did not taint the portion of the contract requiring PSCC to give Delavau 2% of its commissions from sales it brokered between others and Lederle.  Thus, as the non-tainted portion of the contract is severable from the portion tainted by commercial bribery, Delavau can recover pursuant to its counterclaim for breach of the severable portion of the contract.  See Muhammad v. County Bank of Rehoboth Beach, 912 A.2d 88, 103 (N.J. 2006) (noting New Jersey courts will enforce contract after excising illegal provision), cert. denied, 127 S.Ct. 2032 (2007).

The facts as found by this Court show that PSCC breached the duty of providing Delavau a right of first refusal on any Lederle business.  The Court rejects PSCC's argument that Delavau was not able to perform the work done by Testpak, as the facts established by this Court show that Delavau could have subcontracted the job and thus fulfilled its obligation of providing Lederle a finished product.  PSCC breached the contract with Delavau by cutting out Delavau as a "middle man" and instead getting Testpak a contract

from Lederle.  Delavau is therefore entitled to its remedy under the contract:  2% of the commissions PSCC or Sadlon received as a result of brokering the dealings between Testpak and Lederle. The parties agree the proper amount is $28,000.  (Pl. Br., at 11; Delavau Br., at 8; Sadlon Br., at 4.)[1]

## II.  Attorney Fees

The Court, in view of the decision on remand as to Delavau's counterclaim, also reconsiders its prior decision on attorney fees, and concludes that Delavau is entitled to the full amount it seeks as a prevailing party.  The Court rejects PSCC's argument that Delavau's lack of success on its disgorgement counterclaim precludes recovery of attorney fees.  The Court notes that disgorgement was a compulsory counterclaim and involved the same proofs supporting Delavau's success in its commercial bribery defense and breach of contract counterclaim.[2]  The Court thus finds that Delavau is a prevailing party and entitled to contractual attorney fees under New Jersey law.  See N. Bergen Rex Transp. v. Trailer Leasing Co., 730 A.2d 843, 848-49 (N.J. 1999). Delavau is entitled to the total amount of attorney fees it seeks

_____

[1]  The Court will direct Delavau to submit a proposed judgment calculating pre-judgment interest.  See N.J.Ct.R. 4:42-11(b).

[2]  The Court also rejects Sadlon's specious argument that Delavau's recovery of attorney fees is precluded by its failure to properly plead attorney fees in the complaint.  (See dkt. entry nos. 41 & 67.)

— $818,510.39 — as the amount is properly documented and neither PSCC nor Sadlon has specifically objected to any portion thereof.

## III. Liability of Sadlon and Micelli

Sadlon and Micelli are jointly and severally liable to Delavau for damages and attorney fees.  This Court's findings of fact and previous legal conclusions establish that PSCC was not a de jure or de facto corporation, and therefore cannot shield them from individual liability.  Where a corporation de jure or de facto does not exist, the "persons doing business in an assumed corporate capacity are partners and liable as partners" under New Jersey law.  Culkin v. Hillside Rest., 8 A.2d 173, 175 (N.J. Chan. 1939).  Neither PSCC nor Sadlon presented evidence that PSCC was in fact a sole proprietorship rather than a partnership during the relevant time period, and do not make such an argument on remand.  Moreover, the evidence presented at trial established that Sadlon and Micelli operated as partners, as Sadlon agreed to pass 50% of his commissions to Micelli after she married DiBenedetto's son, resulting in Micelli receiving $461,000 of the fees paid to PSCC from Delavau.  (9-27-04 Mem. Op., at 12, 17, 21.)  The Court finds this evidence is sufficient to refute the argument that Micelli should not be held personally liable.

The Court rejects the argument that the Court's prior application of the doctrine of corporation by estoppel bars Delavau from now claiming personal liability as to Sadlon and Micelli.  This argument is without merit, as the Court's prior

9

application of the doctrine of corporation by estoppel was for the limited purpose of preventing Delavau from relying on PSCC's defective corporate status as a basis to dismiss the complaint. (See 9-27-04 Mem. Op., at 8, n.4.)  The Court's ruling on PSCC's corporate status was for purposes of determining PSCC's capacity to sue and be sued, and not determinative of whether Sadlon or Micelli could use the non-existent corporation as a shield to the consequences of their actions.  Moreover, this Court has already held that application of the corporation by estoppel doctrine did not prevent Delavau from amending the pleadings to assert counterclaims against Sadlon and Micelli as individuals.  59 F.Supp.2d 408, 415 n.9 (D.N.J. 1999).  Thus, the Court concludes that the doctrine of corporation by estoppel does not preclude individual liability by Sadlon or Micelli for damages and attorney fees.

### CONCLUSION

The Court will (1) enter judgment in favor of Delavau on its counterclaim for breach of contract, (2) award $818,510.39 in attorney fees to Delavau, and (3) hold Sadlon and Micelli jointly and severally liable for damages and attorney fees.  The Court will enter an appropriate order and judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: November 29, 2007

10